# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:15CV202

| | |
|---|---|
| KENNETH D. BELL, in his capacity as court-appointed Receiver for Rex Venture Group, LLC d/b/a ZeekRewards.com, <br><br> Plaintiff, <br><br> vs. <br><br> REMCO BOOM and RENZE DEELSTRA, <br><br> Defendants. | ORDER |

This matter is before the Court upon Defendant Remco Boom's Motions to Dismiss and Quash Service of Process for Lack of Personal Jurisdiction. (Doc. No. 9). The Receiver has filed a response in opposition to these motions but Defendant Boom has not filed a Reply.

This is one of the several "clawback" actions instituted by the Receiver of Rex Venture Group, LLC ("RVG") against Net Winners in the ZeekRewards scheme. Recently, in another similar "clawback" action, *Bell v. Brownie*, the Court has addressed the same issues and arguments presented by these motions.[1] *See*, *Bell v. Brownie*, Case No. 3:15-cv-70, *Order*, dated February 4, 2016 (Doc. No. 24). Based on the legal analysis and grounds stated in the Order denying the motion

---

[1] In *Bell v. Brownie* and this action, the moving defendants are represented by the same counsel, who filed nearly identical arguments in support of the motions in both cases.

to dismiss in *Brownie*, together with the particular facts concerning Defendant Boom's participation in Zeek as discussed below, the Court finds that Defendant Boom's motions should be denied.

**FACTUAL BACKGROUND**

Defendant Boom signed up with ZeekRewards in March 2011. RVG records show that on March 21, 2011 he created a user account on the ZeekRewards website and typed in a username, his actual name, his address, phone number and other details. Defendant Boom paid $615 to ZeekRewards in subscription payments between March 21, 2011 and August 5, 2012. He also purchased $10 in VIP/Sample bids from ZeekRewards. Boom was a net winner of over $103,000, and he ultimately built an extensive downline of 6,263 paying members during the course of the scheme, with 5,327 of these members losing money (a total of over $1,500,000). *See* Receiver's Response in Opposition to Defendant Remco Boom's Motion to Dismiss, Exhibit A (Affidavit of Michael Busen ("Busen Affidavit")).

RVG made known to anyone interested in the ZeekRewards program that the company was based in North Carolina, in the United States of America. At the top of the ZeekRewards homepage, where Defendant Boom logged in every day, there was a conspicuous "About Us" link. *See* Busen Affidavit at Exhibit 2. Moreover, the ZeekRewards homepage indicated that it operated on "east coast USA time" and dealt in United States currency. *Id.* at Exhibits 2 and 4. In other words, it was no secret that ZeekRewards operated out of North Carolina.

From the day he signed up with ZeekRewards, Defendant Boom actively directed efforts and attention to ZeekRewards, in North Carolina, nearly every day until the scheme's collapse in August 2012. Starting on March 21, 2011 and continuing each day (with the lone exceptions of April 7, 2011 and October 23, 2011) until through August 16, 2012, when ZeekRewards was shut

down, Boom logged into his "back office" page to report his having met the so-called daily "advertising" requirement. *See id.* at Exhibit 5 (spreadsheet of Defendant Boom's claimed ad placement activity). In addition, on a frequent, often weekly basis, Defendant Boom logged in to the ZeekRewards site to request a cash-out payment from the scheme. These payments came from ZeekRewards' account at a bank in North Carolina and all the money Defendant Boom requested and received from ZeekRewards was stated in US dollars. *See* Busen Affidavit at Exhibit 6. Moreover, Defendant Boom also directed his actions to North Carolina through the ZeekRewards site by frequently changing the allocation of his daily "Retail Profit Pool" ("RPP") payouts between the repurchase of VIP bids and "available cash." *See* Busen Affidavit at Exhibit 7.

**DISCUSSION**

As discussed in *Brownie*, this Court can exercise personal jurisdiction over Defendant Boom to the full extent that he would be subject to jurisdiction under North Carolina law. *See* Fed. R. Civ. P. 4(k)(1)(A); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Under North Carolina law, the breadth of personal jurisdiction that can be asserted under § 1-75.4 extends to any defendant who meets the minimal contact requirements of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). *See Brownie,* Case No. 3:15-cv-70, *Order* dated February 4, 2016 at 5-7.

Like Defendant Fraser in *Brownie*, Defendant Boom's repeated, consistent and extensive contacts with the ZeekRewards program in North Carolina are more than sufficient to satisfy the standard of "minimum contacts" based on specific personal jurisdiction. Boom voluntarily and intentionally signed up for a scheme stated to be "headquartered" in North Carolina and then had daily purposeful interaction with the scheme, including ad placement notifications, "playing the game" by requesting particular allocations between "bid purchases" and "available cash," and

3

directing the payment of over $103,000 to his account. And, it is these contacts with the State, including the repeated requests and payments of money by and to Boom in and from North Carolina, which are the genesis of the claims against him in this action. Thus, Boom satisfies all the elements of the governing *ALS Scan* test. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 712-714 (4th Cir. 2002).

Also, as in *Brownie*, North Carolina has a clear interest in supporting the RVG Receivership of a company headquartered in North Carolina, protecting victims of unlawful schemes in the state and discouraging those who might try to profit from such schemes (whether with direct knowledge of the wrongdoing or simply participating in a program "too good to be true").

Moreover, Defendant Boom invoked the benefits and protections of the law of North Carolina by his intentional interactions and requests for funds in connection with the ZeekRewards program. Had he lost money like the more than 5000 victims under him in the pyramid, Boom would have been able to seek the protection of the North Carolina laws being asserted to protect those involved in the scheme – as a number of the victims he recruited to the scheme have already done. Finally, the efficient resolution of this controversy in one forum rather than multiple suits in other countries weighs heavily in favor of the W.D.N.C. exercising personal jurisdiction over Boom and the other international net winners who intentionally participated in and profited from a scheme advertised as "headquartered" in North Carolina.

The Court further finds that the exercise of personal jurisdiction over Defendant Boom is fair and just. Boom voluntarily and intentionally sought to be a part of the scheme in the hopes of making money here in North Carolina (whether he did it in person or through a computer). Even if Boom had no actual knowledge that he was doing business in North Carolina, Boom cannot

4

avoid personal jurisdiction by allegedly putting his head in the sand and failing to simply click on the "About Us" link displayed on the website which identified RVG's headquarters and offices in North Carolina. Indeed, Boom admits that he knew he was doing business in the United States and further admits that he thought ZeekRewards operated out of Las Vegas. *See* Boom Affidavit, ¶6. Plainly, if Boom thought he was doing business in Las Vegas, Nevada it is not unfair to hold him accountable in North Carolina, the state which was clearly noted as the headquarters on the website he used to do business and which is in fact thousands of miles closer to his residence in the Netherlands.

Boom did business with a North Carolina-based company, requested payments (which came from a North Carolina bank) and sought and obtained profits from his participation in the scheme. Boom knew or should have known that if he purposefully availed himself of an opportunity to make money in North Carolina (whether or not he cared to find out the actual location of the scheme) that any claims related to his participation might be brought in a court in North Carolina. To hold otherwise would be to allow individuals outside the state to intentionally come to North Carolina electronically and engage in conduct that subjects them to claims but effectively avoid liability because of the distance and cost of pursuing them outside of North Carolina. Accordingly, it is both fair and just for this Court to exercise jurisdiction over Defendant Boom based on his intentional, repeated and extensive participation in the ZeekRewards scheme in North Carolina.

IT IS THEREFORE ORDERED that Defendant Remco Boom's Motions to Dismiss and Quash Service of Process for Lack of Personal Jurisdiction are hereby DENIED.

Signed: February 22, 2016

Graham C. Mullen
United States District Judge